UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEVERLY A. MULVIHILL,

                    Plaintiff,

vs.

PACIFIC MARITIME ASSOCIATION and
INTERNATIONAL LONGSHORMEN'S
AND WAREHOUSEMEN'S UNION,
LOCAL 19,

                    Defendants.

No.  C10-1811Z

ORDER

THIS MATTER comes before the Court on motions to dismiss filed by both

defendants.  Plaintiff Beverly A. Mulvihill is a member of the Defendant International

Longshoremen's and Warehousemen's Union, Local 19 ("Union").  Ms. Mulvihill

filed a charge of employment discrimination with the Equal Employment Opportunity

Commission ("EEOC"), but the EEOC was unable to conclude that any discrimination

took place and sent a 'right to sue' letter to Ms. Mulvihill.  After receiving that letter,

Ms. Mulvihill filed a complaint alleging violations of Title VII, the Age Discrimination in Employment Act ("ADEA"), and Washington's Law Against Discrimination ("WLAD"), by the Union and her employer, Pacific Maritime Association ("PMA").

The Union now moves for partial dismissal of Ms. Mulvihill's Title VII and ADEA claims that arose more than 300 days prior to the day she filed a charge with the EEOC. The Union also moves to dismiss Ms. Mulvihill's claims for breach of the duty of fair representation as being barred by the six-month statute of limitations. PMA also filed a motion for partial dismissal of Ms. Mulvihill's Title VII, ADEA and state law claims based on the statute of limitations, as well as a motion to dismiss the complaint in its entirety, without prejudice, for failure to make a short plain statement of the claim.

## BACKGROUND

PMA employs longshore workers to handle cargo in the Port of Seattle on behalf of its member companies. Def. Union's Motion to Dismiss at 2:8-9 (docket no. 9). The Union operates a hiring hall from which it dispatches longshore workers at PMA's request. *Id*. at 2:10-11. Workers are given preference based on their 'class' starting with Class A registered longshoremen, then to Class B, and finally to "Identified Casuals." *Id*. at 2:11-16.

Ms. Mulvihill's first shift as a longshore worker began in September of 2002. Complaint at 2:14 (docket no. 3). At that time, Ms. Mulvihill was classified as an "Unidentified Casual" and was put on a 200-hour list for advancement to "Identified Casual" status, but required training and certification to drive a semi-truck to advance. *Id*. at 2:16-18. In October of 2004, Ms. Mulvihill received her semi-truck training, however her trainer left early every day and Ms. Mulvihill was not certified. *Id*. at 2:18-24. In March of 2005, Ms. Mulvihill was stuck in Wenatchee, Washington, due to a car accident, and was unable to attend her rescheduled retraining. *Id*. at 3:7-14. When Ms. Mulvihill returned to reschedule her training, she was informed that she would return to the bottom of the list for advancement to ID Casual status. *Id*. The following May, Ms. Mulvihill arranged semi-truck training in order to advance to ID Casual status along with the rest of the workers on the 200-hour list, but she would not be able to advance until the Wednesday following the Saturday that everyone else would advance (assuming she passed her certification). *Id*. at 4:12-16.

When Ms. Mulvihill's training began, she was assigned a new trainer that had never trained anyone else before. *Id*. at 4:17-19. Because the trainer left early on both days of training and did not allow Ms. Mulvihill to stay and practice, she did not receive eight hours of training each day. *Id*. at 4:20-25. On the third day of training, Ms. Mulvihill took the semi-truck driving test and successfully completed all the maneuvers, though she took too long and thus did not pass the test. *Id*. at 5:6-17. The instructor grading Ms. Mulvihill had been on his cell phone for at least part of the test.

*Id.* When she asked to retake the test, Ms. Mulvihill was told that she had to write to the Joint Port Labor Relations Committee ("JPLRC") and tell them that she had failed the time factor. *Id.*

Ms. Mulvihill wrote a letter to the JPLRC requesting that she be retrained in June of 2005. *Id.* at 5:17-19. The following August, Ms. Mulvihill filed a grievance against PMA for failing to provide adequate training or advancement. *Id.* at 5:23-25.[1] Finally, in May of 2007, Ms. Mulvihill was retrained and received her certification to drive at the ports. *Id.* at 6:6-8. Ms. Mulvihill advanced to ID Casual status in June of 2007.[2] *Id.* at 6:9-12. Ms. Mulvihill alleges that she was discriminated in training due to her age and sex because she did not receive the same opportunity and quality of training and as a result did not advance at the same rate as her peers. *Id.* at 5:18-21. Ms. Mulvihill also claims lost wages as a result of a loss of opportunity for advancement due to the discrimination. Response to Union's Motion to Dismiss at 5:10-12 (docket no. 26).

On October 4, 2007, Ms. Mulvihill was involved in an accident while driving a semi-truck. Complaint at 6:12-15.[3] The accident was a result of an unsafe traffic pattern in place at Pier 5. *Id.* Ms. Mulvihill alleges that because the accident was not

---

[1] Sometime in 2005, it is not clear when, Ms. Mulvihill asked Rich Austin, a member of the JPLRC, about retraining; this apparently caused a scene in the break room. *Id.* at 6:3-5.
[2] Ms. Mulvihill's peers had advanced to Class B registered longshoremen in October of 2006. *Id.* at 6:10-12.
[3] PMA incorrectly identified the date of the accident as October 3, 2007, in its handling of the incident. *Id.* at 6:12-14.

her fault, but the result of an unsafe traffic pattern, she was discriminated against by being punished for the accident on account of her age and sex. *Id*. at 6:23-25.

The next week, Ms. Mulvihill attended forklift training. *Id*. at 7:2-4. The forklift trainer, Frank Zapata, refused to certify Ms. Mulvihill because he was upset over a previous conversation where she said that "some guys . . . would rather not have women on the waterfront." *Id*. at 7:5-8. Another trainer, Jon, certified Ms. Mulvihill on basic forklift but was then intimidated by Frank as a result. *Id*. at 7:8-9. Frank then refused to let Ms. Mulvihill train on the heavy forklift. *Id*. at 7:9-10. Ms. Mulvihill called Rudy Finney, the person in charge of the forklift training, and he trained her on heavy forklift, but would not certify her because she could not move enough in a shift. *Id*. at 7:15-18. Rudy promised Ms. Mulvihill that she would be retrained in January. *Id*. at 7:19-20.

On December 7, 2007, Ms. Mulvihill was dispatched to a shift, but was never paid. *Id*. at 7:22-23. On December 10, 2007, PMA sent Ms. Mulvihill a letter informing her that she was on "Permanent No Dispatch" status. *Id*. at 8:19-20. The three reasons PMA cited for placement on "Permanent No Dispatch" status were (1) late for a shift on August 15, 2005; (2) missed a shift on September 4, 2007; and (3) the accident on October 4, 2007. *Id*. at 8:14-16. Contrary to its usual policy, PMA did not allow Ms. Mulvihill to continue to work until she had an opportunity to provide an explanation for an incident at a JPLRC meeting. *Id*. at 8:4-6. While Ms. Mulvihill had provided signed documentation excusing her absence from the September 4 shift very

shortly after being placed on "Permanent No Dispatch" status,[4] Ms. Mulvihill was not

allowed to return to work until March 13, 2008. *Id*. at 9:3. Ms. Mulvihill alleges that

she was discriminated against due to her age and sex because she was not allowed to

continue working until being provided an opportunity to present a defense. *Id*. at

8:4-6. Ms. Mulvihill also claims lost wages as a result of being unable to return to

work until March 13, 2008. Response to Union's Motion to Dismiss at 5:13.

      While out of work in January of 2008, Ms. Mulvihill visited Union President

Harold Ugles to ask about her case. Mr. Ugles told her that he would file a grievance

against her for harassment. Complaint at 9:4-6. On March 14, 2008, Ms. Mulvihill

was involved in a verbal altercation with another union member, Natalie Phillips. *Id*.

at 9:10-21. Following the altercation, Ms. Phillips filed a grievance against Ms.

Mulvihill, and Ms. Mulvihill filed a grievance against Ms. Phillips in response. *Id*. at

9:22-24. PMA sent Ms. Mulvihill a "Letter of Reminder" stating that filing of

grievances in retaliation is not acceptable. *Id*. at 9:25 – 10:3.

      Ms. Mulvihill was eventually certified on heavy forklift in October of 2008. *Id*.

at 10:10. On November 23, 2009, Ms. Mulvihill was involved in an accident due to

the loss of a contact lens. *Id*. at 11:3-8.[5] Following this incident, Ms. Mulvihill was

again placed on "Permanent No Dispatch" status, effectively terminating her

employment. *Id*. at 11:10-12. Ms. Mulvihill again alleges that she was not allowed to

---

[4] Ms. Mulvihill provided a signed, notarized tow bill to PMA on December 10, 2007. *Id*. at 8:19-21.

[5] This may be the incorrect date. The complaint states this date as the date of the accident but then later states that this is the wrong date. *See id*. at 11:17-19.

continue work until after a JPLRC meeting and decision, while other employees were. *Id*. at 11:11-12. Ms. Mulvihill alleges that she was terminated due to her age and sex in violation of Title VII, ADEA, and WLAD, as she had a legitimate defense to the accident that was ignored by her employer. *Id*. at 12:7-9. Furthermore, Ms. Mulvihill alleges that the Union did not fairly represent her after the accident on account of her age and sex in violation of the Union's duty of fair representation. *Id*. at 11:18-20. Ms. Mulvihill also alleges that she was subjected to a hostile work environment because of her age and sex in violation of Title VII, the ADEA, and WLAD. *Id*. at 12:3-5. In addition, Ms. Mulvihill alleges that she was denied an equal opportunity for advancement as a result of the hostile work environment. Response to Union's Motion to Dismiss at 2:15-17. Finally, Ms. Mulvihill has also alleged breach of contract and torts of negligent or intentional misrepresentation, negligence, and intentional harm. *Id*. at 3:9-16.

## DISCUSSION

### I. PMA's MOTION TO DISMISS FOR VIOLATIONS OF RULE 8

PMA moves to dismiss the complaint for failure to satisfy the Rule 8 requirement of a short, plain statement of the claims. Def. PMA's Motion to Dismiss at 1:19-21 (docket no. 10). A complaint is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief" and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Court may dismiss a plaintiff's claim for failure to comply with the Federal Rules.

Fed. R. Civ. P. 41(b).  The function of pleadings under the Federal Rules is to provide fair notice of the claims asserted such that the adverse party may prepare for trial. *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2nd Cir. 1995).  "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Id.  See also McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).  In addition, complaints filed by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

The only basis PMA has articulated for dismissing Ms. Mulvihill's complaint is that it is 14 pages long.  Def. PMA's Motion to Dismiss at 2:11-12.  While the complaint is not a model of clarity or conciseness, the complaint sufficiently states the factual basis for Ms. Mulvihill's allegations such that PMA and the Union have been provided fair notice of the claims asserted.  The complaint is not so "confused, ambiguous, vague, or otherwise unintelligible" that PMA is unable to ascertain what Ms. Mulvihill is alleging and the factual basis for those allegations.[6]  Because PMA has not articulated a sufficient basis for dismissing the complaint due to violations of Rule 8, the Court DENIES PMA's Motion to Dismiss the complaint in its entirety without prejudice.

---

[6] At the very least, both defendants were able to determine that Ms. Mulvihill seeks relief under Title VII, the ADEA, and WLAD, as well as theories of breach of contract and breach of the duty of fair representation.  Furthermore, the defendants are aware of the relevant dates the incidents giving rise to these claims took place.  *See* Def. Union's Motion to Dismiss; Def. PMA's Motion to Dismiss.

## II.     PMA's 12(b)(6) MOTION FOR PARTIAL DISMISSAL

PMA also moves to dismiss portions of the complaint for failure to state a claim

on the ground that those claims are barred by the statute of limitations.  Def. PMA's

Motion to Dismiss at 1:25 – 2:2.  In ruling on a motion to dismiss, the Court must

assume the truth of the plaintiff's allegations and draw all reasonable inferences in the

plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The

question for the Court is whether the facts in the complaint sufficiently state a

"plausible" ground for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A motion to dismiss based on the running of the statute of limitations may be granted

when the running of the statute is apparent on the face of the complaint.  *Jablon*, 614

F.2d at 682.

### A.  <u>PMA's Motion to Dismiss Ms. Mulvihill's Federal Discrimination Claims</u>

PMA argues that most of Ms. Mulvihill's claims are time barred because they

arose more than 300 days before she filed a charge with the EEOC.  Under both the

ADEA and Title VII in Washington,[7] a charge of discrimination must be filed within

300 days of the alleged discriminatory acts.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C.

---

[7] Washington is a "deferral jurisdiction" for purposes of both Title VII and the ADEA because there is a State agency with authority to grant or seek relief.

§ 626(d).  Ms. Mulvihill filed a charge with the EEOC alleging violations of Title VII

and the ADEA on March 19, 2010.  Barnes Decl., Exh. A (docket no. 11).[8]  Thus,

PMA argues that all of Ms. Mulvihill's claims set forth prior to the entry dated

November 2009[9] are barred by the statute of limitations because they occurred more

than 300 days prior to the date Ms. Mulvihill filed a charge of discrimination.  Def.

PMA's Motion to Dismiss at 3:11-13.

       While the statute bars recovery for discrete discriminatory acts occurring more

than 300 days prior to filing a charge with the EEOC, *see Nat'l R.R. Passenger Corp.*

*v. Morgan*, 536 U.S. 101, 105 (2002), Ms. Mulvihill has also alleged that she was

subjected to a hostile work environment.  Complaint at 9:8, 10:18 & 25, 11:23, 12:4.

Hostile work environment claims are different from claims for discrete acts because

the nature of a hostile environment involves repeated conduct.  *Morgan*, 536 U.S. at

115.  "Such claims are based on the cumulative effects of individual acts."  *Id.*  The

discrimination complained of does not occur on any particular day, but over a period

of time, though any single act may not be actionable on its own.  *Id.*  Because a hostile

work environment claim is based on "a series of separate acts that collectively

constitute one 'unlawful employment practice,'" only one act contributing to the claim

---

[8] The Court may consider the EEOC charge without converting the motion to dismiss
to a motion for summary judgment because it is a "public document of which a court
may take judicial notice."  *Ndondji v. Interpark, Inc.*, 768 F.Supp.2d 263, 272 (D.D.C.
2011) (quoting *Ahuja v. Detica Inc.*, 742 F.Supp.2d 96, 101–02 (D.D.C.2010).

[9] The date 300 days prior to March 19, 2010, is May 23, 2009.  All claims raised in the
complaint prior to the paragraph dated November 2009 took place in March of 2008 or
earlier.

must have occurred within the statutory time period in order to allow consideration of the entire period of a hostile environment for purposes of liability. *Id*. at 117.

However, to constitute an actionable unlawful employment practice, the various acts comprising the hostile work environment "must have some relationship to each other." *Id*. at 118. Moreover, discrete acts, such as termination, failure to promote, denial of transfer, or refusal to hire, cannot qualify as related acts. *Id*. at 108-113. Finally, "Discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id*. at 112.

Ms. Mulvihill repeatedly alleges she was subject to belittlement, harassment, intimidation and other acts that would lead to a hostile work environment. Even assuming that those acts bear sufficient relationship to each other and are sufficiently severe to state a cognizable cause of action for a hostile work environment, there is no related act within the statutory time period that would bring in those other acts. Ms. Mulvihill's only timely claim is in relationship to her placement on permanent "no dispatch" status on November 25, 2009. That act, as it effectively terminated her employment, is clearly a discrete act, as contemplated by the Supreme Court in *Morgan* and thus does not qualify as a related act sufficient to make Ms. Mulvihill's hostile work environment claims timely. Because Ms. Mulvihill's only timely claim is her claim for discriminatory termination, and because that claim is a discrete act that will not serve to bring in her remaining hostile work environment claims, the remainder of Ms. Mulvihill's claims are time barred because they arose more than 300

days before she filed a charge of discrimination with the EEOC.  Therefore, the Court GRANTS PMA's 12(b)(6) motion for partial dismissal with prejudice of Ms. Mulvihill's Title VII and ADEA claims arising prior to May 23, 2009.

## B.  **PMA's Motion to Dismiss Ms. Mulvihill's State Discrimination Claims**

PMA moves to dismiss Ms. Mulvihill's state law claims arising prior to November 9, 2007, as barred by the statute of limitations.[10]  PMA's Motion to Dismiss at 3:19-25.  WLAD provides that it is an unfair practice for employers to discriminate in terms and conditions of employment or discharge an employee because of that employee's age or sex.  RCW 49.60.180(2), (3).  The three-year statute of limitations embodied in RCW 4.16.080(2) for direct invasions of a plaintiff's property rights applies to claims under RCW ch. 49.60.  *Lewis v. Lockheed Shipbuilding and Construction Co.*, 36 Wn. App. 607, 613 (1984).  However, the Washington Supreme Court has adopted the reasoning in *Morgan* for hostile work environment claims brought under RCW ch. 49.60.  *Antonius v. King County*, 153 Wn.2d 256, 270 (2004).  Thus, as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered."  *Id.* at 264 (quoting *Morgan*, 536 U.S. at 117).

Ms. Mulvihill alleges a hostile work environment in violation of WLAD.  Complaint at 11:23-24.  There are four elements to a hostile work environment claim:

---

[10] Ms. Mulvihill filed this lawsuit on November 9, 2010.

"(1) The harassment was unwelcome, (2) the harassment was because of sex [or age],[11] (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer." *Antonius*, 153 Wn.2d at 261 (citing *Glasgow v. Ga-Pac. Corp.*, 103 Wn.2d 401, 406-07 (1985)). To establish that the harassment "affected the terms and conditions of employment," the plaintiff must establish that the harassment was both subjectively and objectively severe. *Ramirez v. Olympic Health Management Systems, Inc.*, 610 F.Supp.2d 1266, 1285 (2009). The frequency, severity, and nature of the conduct must be considered from the perspective of a reasonable person belonging to plaintiff's group in making the objective determination. *Id*. Finally, the harassment which occurred within the statutory time period must be related to the other acts constituting a hostile work environment in order to render the claim timely. *See Morgan*, 536 U.S. at 118.

Ms. Mulvihill raises essentially three claims that fall within the three-year statute of limitations for RCW ch. 49.60: (1) that she was not paid for a shift which she worked on December 7, 2007, and was wrongfully placed on "no dispatch" status for 91 days following that shift; Complaint at 7:22, 8:4-6; (2) that in March of 2008 Ms. Mulvihill was harassed by two female coworkers who blocked her path into the dispatch hall and said, "you can't go in there, registered only;" *id*. at 9:7 – 10:9; and (3) that she was wrongfully terminated on November 25, 2009. *Id*. at 12:7-9. The first and third timely claims can be clearly identified as discrete acts because these claims

---

[11] *See Robinson v. Pierce County*, 539 F.Supp.2d 1316, 1329 (2008) (applying the same four elements to a hostile work environment claim based on age discrimination).

are related to a wrongful termination or a wrongful placement on "no dispatch" status. As such, neither claim serves to make Ms. Mulvihill's hostile work environment claim timely. Thus, Ms. Mulvihill's hostile work environment claim is timely only if her claim related to the altercation in March of 2008 is related to the other acts and thus considered to be contributing to her claim.

Ms. Mulvihill alleges that the altercation is related to the previous years of discrimination she suffered in her semi-truck training. *Id*. at 9:7-9. Ms. Mulvihill alleges that the poor semi-truck training was a result of her age and gender. *Id*. at 5:19-21. Ms. Mulvihill further alleges that her trainers played a part in the harassment and intimidation. *Id*. at 7:4-10. Finally, Ms. Mulvihill also alleges that the harassment has resulted in slower advancement and less opportunity to work than her peers have received. *Id*. at 6:9-11. Assuming all the allegations in the complaint are true, Ms. Mulvihill has stated a plausible cause of action for a hostile work environment under WLAD. Ms. Mulvihill alleges that the harassment is due to her age and gender, that the harassment is imputable to the employer because her trainers are involved in the discrimination, and that the harassment is sufficiently severe that it has affected the terms of her employment by preventing her from advancing at the same rate as other similarly situated employees. Further, Ms. Mulvihill alleges a relationship between the timely harassment and the harassment taking place prior to the statutory period. The timely claim can thus serve to bring the related hostile work environment claims within the statutory time period as part of a single, unlawful employment practice.

Therefore, the Court DENIES PMA's motion to dismiss Ms. Mulvihill's state law hostile work environment claims.

## III.    THE UNION'S 12(b)(6) MOTION FOR PARTIAL DISMISSAL

The Union moves to dismiss part of the Complaint for failure to state a claim. Union's Motion to Dismiss at 1:22-25. The Union argues that all of Ms. Mulvihill's Title VII and ADEA claims based on events prior to May 23, 2009, are time barred.[12] *Id*. at 3:11-13. Likewise, the Union argues that Ms. Mulvihill's claims based on a breach of the duty of fair representation are time barred because of the six-month statute of limitations. *Id*. at 3:7-10.

### A. <u>**The Union's Motion to Dismiss Ms. Mulvihill's Federal Discrimination Claims**</u>

The Union's motion to dismiss Ms. Mulvihill's Title VII and ADEA claims is premised on the same arguments, and is essentially the same motion, as PMA's motion for partial dismissal. For the reasons stated above, the Court GRANTS the Union's 12(b)(6) motion for partial dismissal with prejudice of Ms. Mulvihill's Title VII and ADEA claims arising prior to May 23, 2009.

///

///

///

---

[12] Sporadically throughout its motion the Union refers to a theory that Ms. Mulvihill's claims are barred for failure to exhaust her administrative remedies. However, it appears that the Union is simply arguing that she failed to file a complaint with the EEOC within 300 days of the alleged discrimination.

**B.  The Union's Motion to Dismiss Ms. Mulvihill's Claims for Breach of the Duty of Fair Representation**

The Union moves to dismiss many of Ms. Mulvihill's claims for breach of the duty of fair representation as being time barred.  Union's Motion to Dismiss at 1:22 – 2:2.  Claims for breach of the duty of fair representation are governed by the six-month statute of limitations in 29 U.S.C. § 160(b).  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983).  Because Ms. Mulvihill filed this lawsuit on November 9, 2010, the statute of limitations had run on all of Ms. Mulvihill's claims of breach of the duty of fair representation.  However, the Union has not challenged the timeliness of Ms. Mulvihill's claim of unfair representation relating to her November, 2009 discharge.  Complaint at 11:17-20.  Therefore, the Court GRANTS the Union's partial motion to dismiss with prejudice Ms. Mulvihill's claims of breach of the duty of fair representation, except her claim relating to her placement on permanent "no dispatch" status in November of 2009.

**IV.  CONCLUSION**

(1)  The Court DENIES PMA's Motion to Dismiss without prejudice, docket no. 10.

(2)  The Court GRANTS PMA's Motion for Partial Dismissal of Ms. Mulvihill's Title VII and ADEA claims, docket no. 10.

(3)  The Court DENIES PMA's Motion for Partial Dismissal of Ms. Mulvihill's state law hostile work environment claims, docket no. 10.

(4)     The Court GRANTS the Union's Motion for Partial Dismissal of Ms. Mulvihill's Title VII and ADEA claims, docket no. 9.

(5)     The Court GRANTS the Union's Motion for Partial Dismissal of Ms. Mulvihill's claims for breach of the duty of fair representation, docket no. 9.

Following this disposition of the above motions, Ms. Mulvihill's remaining claims going forward are limited to:

(1)     Title VII and ADEA claims against PMA and the Union relating to the termination of her employment on November 28, 2009;[13]

(2)     Breach of the duty of fair representation claims against the Union relating to the termination of her employment on November 28, 2009;[14] and

(3)     State law claims against PMA and the Union for a hostile work environment.[15]

IT IS SO ORDERED.

DATED this 5th day of October, 2011.

_____
Thomas S. Zilly
United States District Judge

---

[13] Complaint at 11:10 – 12:11.
[14] Complaint at 11:17-20.
[15] Complaint at 11:23 – 12:11