1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEVERLY A. MULVIHILL,

                    Plaintiff,

        v.

PACIFIC MARITIME
ASSOCIATION, et al.,

                    Defendants.

C10-1811 TSZ

ORDER

13

14

15

16

17

18

19

20

21

22

23

THIS MATTER comes before the Court on Defendant ILWU Local 19's Motion

for Summary Judgment, docket no. 72, and Defendant Pacific Maritime Association's

Motion for Summary Judgment, docket no. 79.  Having considered the motions and all

pleadings filed in support of and opposition to the motions, the Court enters the following

Order.

**Background**

Plaintiff Beverly Mulvihill is a female over the age of 40.  Mulvihill Decl., docket

no. 92, at ¶ 2.  Plaintiff began working as a longshore worker in September 2002 and was

classified as an "unidentified casual" worker.  Id. at ¶ 3.  Plaintiff is eligible for

ORDER - 1

representation by Defendant ILWU Local 19 ("Union").  Id. at ¶ 5.  The Union is a local

union affiliated with the International Longshore and Warehouse Union ("ILWU"), a

labor organization with approximately 42,000 members in over sixty local unions.

Ventoza Decl., docket no. 75, at ¶¶ 3-5.  The ILWU is the exclusive bargaining

representative of workers employed by members of Defendant Pacific Maritime

Association ("PMA").  Id. at ¶ 3.  PMA is a multi-employer bargaining association which

represents its employer-members in collective bargaining with the ILWU.  Weber Decl.,

docket no. 81, at ¶ 2.  Employer-members of PMA are steamship, stevedoring and marine

terminal operating companies.  Id.  Longshore workers load and unload cargo aboard

ocean-going vessels for employer-members of the PMA.  Id.

**A. Seniority System and Grievance Procedures.**

Under an established seniority system, waterfront workers begin as "unidentified

casuals," then become "identified casuals" ("ID casuals") before gaining registered

status, first as a Class B limited-registered worker and finally as a Class A fully-

registered worker.  Weber Decl. at ¶ 3; Ventoza Decl. at ¶ 7.

The terms and conditions of employment of longshore workers are governed by the

Pacific Coast Longshore and Clerks Agreement ("PCLCA") and the Pacific Coast

Longshore Contract Document ("PCLCD"), which establishes a system for processing

and resolving contract and personnel issues.  Ventoza Decl. at ¶ 3.  Issues and grievances

typically are first considered by the Seattle Joint Port Labor Relations Committee

("JPLRC"), which includes representatives of the Union and PMA member employers.[1] Id. at ¶¶ 8-9.  If a matter cannot be resolved by the JPLRC, it can be referred for further processing and ultimately to arbitration.  Ventoza Decl. at ¶ 9 and Ex. A at § 17.25-17.26.

Casual workers are subject to a progressive discipline system under the PCLCD, which gives the employer the right to send home a worker for incompetence, insubordination or failure to perform the work as required.  Id. at Ex. A § 17.71. Assuming the violation is not minor, the first offense results in 7 days off, the second offense in 28 days off, and the third offense in the casual worker being placed on "permanent no dispatch" status, which effectively terminates employment.  Ugles Decl., docket no. 74, at ¶ 8.  This is referred to by the Defendants as a "three-strikes" discipline program.  Weber Decl. at ¶ 8.  Discipline is generally initiated by a PMA employer-member complaint filed with the JPLRC.  Id. at ¶ 5.  Sometimes an incident may not result in a complaint, typically when the union representative on site and the employer agree that a formal complaint is not necessary.  Id.  An employer complaint may also be later withdrawn if further information is presented.  Id. at ¶ 6.

**B.  Plaintiff's Employment and Training**

**1.  Semi-Tractor Training**

In August 2004, Plaintiff was placed on a list for advancement to ID casual status, but semi-tractor training and certification became a necessary requirement for

---

[1] Employee grievances alleging incidents of discrimination or harassment are treated differently from other grievances and are processed under a special section of the PCLCD, "Section 13.2."  Ventoza Decl. Ex. A at § 13.2.  Unlike a typical grievance, a 13.2 grievance originates with the Area Arbitrator, not the JPLRC.  See Ventoza Decl. Ex. F.

advancement.  Mulvihill Decl. at ¶ 7.  Plaintiff's first semi-tractor training took place in

October 2004.  Id. at ¶ 8.  Plaintiff expected to have eight full hours of training per day,

but her trainer left early every day of the three day training.  Id.  Plaintiff did not success-

fully complete the training and was rescheduled for training in May 2005.  Id. at  ¶ 10.

        During her second training attempt, Plaintiff was initially assigned a first-time

trainer who did not allow Plaintiff to remain and practice after he wanted to leave for the

day.  Id. at ¶ 11.  After completing two days of training with the first-time trainer,

Plaintiff was assigned a different trainer and tested on the third morning of training.  Id.

at ¶¶ 12-13.  Plaintiff successfully completed all required parts of the test but took too

much time and thus did not pass.  Id. at ¶ 14.  Plaintiff states that she was not given the

full training time because she is female, while male counterparts received their full

training time.  Id. at ¶ 13.  Plaintiff also states that the instructor was not in radio contact

with her during the test, although instructors had used radios with younger trainees and

with male trainees.  Id. at ¶ 14.

        After her unsuccessful second attempt, Plaintiff filed a grievance seeking a third

semi-tractor training opportunity and complaining of the inadequacy of the previous

training.  Ugles Decl. at ¶ 19 and Ex. H.  Plaintiff's letter accompanying the grievance

did not mention discrimination and complained only that the training was inadequate due

to lack of training time and inexperience of the trainer.  Id. Ex. H.  The JPLRC

considered the matter and agreed that Plaintiff could retake semi-tractor training one year

from the date of her last failure (making her eligible for re-training in May 2006).  Id. at

¶ 21.

ORDER - 4

When Plaintiff became eligible for re-training, she was placed at the end of the training list.  Id. at ¶ 21.  Plaintiff was able to retake the training in May 2007, which she passed, and she advanced to ID casual status in June 2007.  Mulvihill Decl. at ¶¶ 20-21.

Plaintiff asserts that her training was inadequate due to her sex and age.  The only potential comparator she provides in her declaration is Purnell Mitchell, who she states is a younger male that walked out of training but was re-trained shortly thereafter and advanced at the standard rate and is now a class A registered longshoreman.  Mulvihill Decl. at ¶ 17.  PMA's records indicate that Mitchell withdrew from training in October 2004 and later passed on his second attempt in February 2005.  Weber Decl. Ex. I.[2]

**2.  Progressive Discipline Complaints and November 2009 Termination**

Plaintiff received her first "strike" or progressive discipline employer complaint on August 15, 2005, when she was reported as failing to show or call for a replacement.  Mulvihill Decl. at ¶ 19.  She lost seven days of opportunity to work as a result of this offense.  Id.[3]

---

[2] Plaintiff also mentions a female, Marla Knigge, who Plaintiff claims had a similar training experience as Plaintiff.  Mulvihill Decl. at ¶ 8.  PMA's records indicate that Knigge did not successfully complete training in October 2004, but passed on her second attempt in February 2005.  Weber Decl. Ex. I.

[3] Plaintiff received two additional employer complaints for failure to show for work, both of which were eventually withdrawn.  A complaint was issued June 28, 2007 and later withdrawn when the Union provided documentation showing that Plaintiff had car trouble that day.  Ugles Decl. at ¶ 23 and Ex. I.  Another complaint was issued for failure to show for a shift on September 4, 2007.  Ventoza Decl. ¶ 14.  Plaintiff presented a tow receipt showing she had car trouble and was unable to make it work, but the JPLRC initially determined that the receipt was not credible.  Id.  The Plaintiff appealed the determination and on March 6, 2008, the JPLRC agreed that the complaint would be withdrawn.  Id. at ¶ 15 and Ex. C.

ORDER - 5

Plaintiff received her second employer complaint for an accident Plaintiff was involved in on October 4, 2007.[4]  Id. at ¶ 22.  The accident resulted from an unsafe traffic pattern, which other workers on site at the time had noted and brought to the attention of supervisors.  Id. at ¶¶ 22-24.  Plaintiff ran into a sling shack,[5] dragging it approximately 30 feet, resulting in the shack being destroyed.  Ventoza Decl. at ¶ 16 and Ex. C.  The JPLRC determined that Plaintiff had not provided an acceptable explanation for the accident.  Id.  Plaintiff had been driving in the traffic pattern for two hours and did not make a formal complaint, stop working, or contact the Union Business Agent about the unsafe traffic pattern prior to the accident.  Id. at ¶¶ 17-18.  Plaintiff appealed the JPLRC decision but the JPLRC ultimately held that Plaintiff was properly found guilty of having an accident.  Ventoza Decl. at ¶ 19 and Ex. C.

Plaintiff's third strike complaint was the result of an accident which occurred on November 23, 2009.  Mulvihill Decl. at ¶ 31.[6]  A Union representative, Chris Romischer, was on the scene at the time and he contacted Union Business Agent Gary Bailey to come to the scene.  Romischer Decl., docket no. 76, at ¶¶ 5-6; Bailey Decl., docket no. 77, at ¶¶ 5-7.  The Union representatives determined that the trailer on Plaintiff's semi-tractor had hit a sling shack, injuring another worker.  Romischer Decl. at ¶¶ 5-6; Bailey Decl. at

---

[4] The JPLRC documentation incorrectly lists the accident date as October 3, 2007.  The accident took place very early the morning of October 4; the date is not a material fact.

[5] A sling shack is a small open-faced shelter where two longshore workers can sit out of the rain.  Romischer Decl., docket no. 76, at ¶ 5.

[6] Plaintiff indicates the accident date is November 23, 2009.  Mulvhill Decl. at ¶ 31.  PMA's documentation indicates the accident date is November 22, 2009.  Ventoza Decl. Ex. E.  The date is not material and the Plaintiff's date will be used.

ORDER - 6

¶¶ 7-8.  They investigated the scene and spoke with Plaintiff and other witnesses to determine if there were any mitigating circumstances, such as physical obstructions, mechanical issues, or some other distraction present.  Romischer Decl. at ¶¶ 7-8; Bailey Decl. at ¶¶ 9-12.  Both Romischer and Bailey stated that Plaintiff gave no reason for the accident other than that she lost control of the semi-tractor and hit the shack.  Romischer Decl. at ¶ 8; Bailey Decl. at ¶ 10.

PMA filed an employer complaint against Plaintiff for the November 23 accident, constituting her third strike and resulting in her being placed on permanent no dispatch status.  Ventoza Decl. at ¶ 20.  Prior to a JPLRC meeting to consider a complaint, the Union Labor Relations Committee (LRC) holds a "grievance day" meeting to determine if there is any argument the Union could make to have the complaint withdrawn.  Id. at ¶ 21.  Romischer and Bailey discussed their investigation of the scene of the Plaintiff's accident with the LRC at a grievance day meeting and stated that they found no explanation or reasonable excuse for the November 23, 2009 accident.  Id. at ¶¶ 22-23.

Plaintiff then met with the LRC at the grievance day meeting and at that time told the LRC that the accident was caused by her contact lens popping out and by her distress over an incident of harassment involving two co-workers in the break room prior to the accident.  Id. at ¶ 24.  Romischer asked Plaintiff why she didn't raise the explanations the night of the accident, but Plaintiff "did not really have an answer."  Id.; Romischer Decl. at ¶ 12.  The LRC considered Plaintiff's reasons for the accident but determined that based on all of the information before it the LRC did not have a basis on the merits to disagree with the employer complaint.  Ventoza Decl. at ¶ 25.

1    Plaintiff appeared before the JPLRC on December 3, 2009, to explain her excuse

2    for the accident.  Ventoza Decl. at ¶ 26 and Ex. E.  The JPLRC discussed her reasoning

3    but the Employers maintained the complaint, keeping Plaintiff on permanent no dispatch

4    status.  Id.

5    Plaintiff filed a 13.2 grievance regarding the harassment she suffered in the break

6    room the night of the accident.  Ventoza Decl. at ¶ 27.  Pursuant to the special 13.2

7    grievance procedures, the grievance went directly to the Area Arbitrator.  Id. Ex. F.  On

8    December 7, 2009, the Area Arbitrator denied Plaintiff's 13.2 grievance for failure to

9    substantiate a claim of discrimination or harassment on the basis of age or sex.  Id. at ¶ 29

10   and Ex. G.  Plaintiff appealed to the Coast Appeals Officer, who denied Plaintiff's appeal

11   on December 22, 2009.  Id. at ¶ 30 and Ex. H.  Following the determination of the 13.2

12   grievance, the JPLRC noted the decision of the arbitrators and upheld Plaintiff's

13   termination pursuant to the progressive discipline policy.  Id. at ¶ 31 and Ex. I.

14   **C. Progressive Discipline Comparators**

15   Plaintiff identifies several individuals that she believes were treated more

16   favorably than she was.  She identifies James Bump, Robert Carter, Stephan Donaldson

17   and Imre deJony[7] as having accidents and offering an explanation "routinely accepted"

18   ///

19   ///

20   ///

21   _____

22   [7] Plaintiff identified "S. Donaldson" and "Emery Djorney"; PMA records indicate the correct employee
names are Stephan Donaldson and Imre deJony.  Weber Decl. Ex. K.

23

ORDER - 8

by PMA.  Mulvihill Decl. at ¶ 4.  Plaintiff does not provide dates of these accidents or

any further details.[8]

　　　　According to PMA records the four identified workers are all registered workers.

Weber Decl. Addendum at 1.  The three-strikes rule does not apply to registered workers;

the PCLCD provides that more stringent rules and penalties may be applicable to casual

workers.  Weber Decl. at ¶ 7.  One of the workers received an employer complaint for an

accident prior to becoming registered and was assessed the seven day suspension for a

first offense.  Weber Decl. Ex. K.  Records for the other three workers show no employer

complaints filed for accidents.  Id.

　　　　Plaintiff also identifies Stephan Donaldson and Robert Carter as being involved in

accidents in 2008 but not charged with an accident.  Mulvihill Decl. at ¶¶ 36-37.  If the

employer and the union representative on site at the time of an accident agree that a

formal complaint will not be filed, PMA will generally not be aware of the accident and

that information will not be found in the employee records.  Weber Decl. at ¶ 5.

　　　　Plaintiff herself was involved in an accident that did not result in an employer

complaint.  Rudolph Finne testified that he observed an accident where Plaintiff hit a

---

[8] Plaintiff admitted in her deposition testimony that she lacked personal knowledge regarding the
accidents she believed the identified male workers were involved in.  Plaintiff heard about Imre DeJony's
accident from someone else and did not know if there was damage to a person or property and did not
know whether a complaint was filed.  Barnes Decl. Ex. F, docket no. 80-2, at 50-51.  Plaintiff stated that
Stephan Donaldson was involved in an accident where a container was damaged but Plaintiff did not
know if there were any injuries or whether a complaint was filed.  Id. at 52-53.  Plaintiff testified that
Robert Carter told her personally about an accident where Carter hit a light pole; Plaintiff believed an
employer complaint was filed and Carter's reason for the accident was accepted but Plaintiff did not know
what damage occurred.  Id. at 54.  Plaintiff stated she had "been told [James Bump] has had multiple"
accidents, but she did not "know the particulars on any of it."  Id. at 58-59.

ORDER - 9

1    sling shack with her truck and dragged the sling shack, including the person inside.

2    Barnes Decl. Ex. G at 3-4.  Although Plaintiff was sent home for the day, no employer

3    complaint was filed for the accident and thus it was never reported in Plaintiff's

4    employee record.  Id. at 4-5.  Plaintiff presents no evidence indicating that employer

5    complaints are not filed more often for male workers than for female workers or that the

6    2008 accidents of Carter and Donaldson were similar to Plaintiff's accidents in 2007 and

7    2009 and thus warranted a complaint.

8         In addition to the names listed in Plaintiff's declaration, PMA has provided

9    evidence relating to other potential comparators that were identified by Plaintiff during

10   the discovery process.  Weber Decl. at ¶¶ 19-21.  These additional comparators generally

11   fall within one of three categories: 1) the employee was already registered at the time of a

12   third complaint and the three-strikes rule didn't apply; 2) the employee was a casual

13   worker who did not have three strikes, in some cases because a strike was withdrawn by

14   the employer; or 3) the employee was placed on permanent no-dispatch status because of

15   a third strike.  Id. at ¶ 22.  Plaintiff does not provide any additional evidence as to any of

16   these or other potential comparators other than the names listed above.

17   **D. Other Incidents**

18        In addition to the employer complaints, several other incidents occurred during

19   Plaintiff's employment.  In October 2007 during forklift training, the trainer Frank Zapata

20   refused to certify Plaintiff because he was upset over a comment Plaintiff made earlier

21   that "some guys…would rather not have women on the waterfront."  Mulvihill Decl. at

22

23

ORDER - 10

1   ¶ 25.  Plaintiff was trained and certified on basic forklift by another trainer but Zapata

2   refused to let her then train on heavy forklift.  Id. at ¶ 26.

3       Plaintiff contends that she was not paid for a shift on December 7, 2007.  Mulvihill

4   Decl. at ¶ 29.  It is unclear if Plaintiff is contending this was part of the discrimination.

5   PMA's payroll records show that Plaintiff was paid for a shift on that date.  Weber Decl.

6   Ex. Q.  The dispute is not material to the claims presented in this case.

7       In March 2008, Plaintiff had an altercation with two female co-workers at the dispatch

8   hall.  Weber Decl., docket no. 81, at ¶ 23 and Exs. L, M.  Natalie Phillips and Kathy

9   Szabo blocked Plaintiff from entering the payroll office and said "you can't go in there –

10  registered only."  Id. at Ex. M.  As Plaintiff walked out she told Ms. Phillips that she was

11  "really disappointed" in Ms. Phillips.  Id.  Ms. Phillips filed a grievance against Plaintiff,

12  alleging that Plaintiff touched, poked, and yelled at her.  Id. at Ex. L.  The day after Ms.

13  Phillips filed her grievance, Plaintiff filed a grievance against Ms. Phillips alleging

14  discrimination and harassment.  Id. at Ex. M.  The JPLRC reviewed the grievances, heard

15  from both women and three witnesses and issued a letter of reminder to both Ms. Phillips

16  and Plaintiff about policies regarding harassment and creating a hostile work

17  environment.  Robbins Decl., docket no. 73, at ¶ 4 and Ex. C.

18      On November 23, 2009, Plaintiff had an altercation with two male co-workers, Carlos

19  Faas and Paul Sloan, which she says contributed to her accident on that date.  Mulvihill

20  Decl. at ¶ 31.  In her witness affidavit to the NLRB, Plaintiff explained that Faas made

21  some comments to Plaintiff, and Plaintiff said she should have advanced before Faas.

22  Barnes Decl. Ex E.  Faas asked "What is that, a racial thing?" and Plaintiff responded

23

ORDER - 11

1   with "What is that, a feminine thing?"  Id.  Faas said there is "no discrimination" on the

2   docks and Plaintiff said "Sure, that's why I don't have 3 years towards 'A' status."  Id.

3   **E.  Claims Remaining**

4       Pursuant to the Court's earlier order, the Plaintiff's only remaining claims are (1) Title

5   VII and ADEA claims against PMA and the Union relating to the termination of her

6   employment on November 28, 2009; (2) Breach of the duty of fair representation claims

7   against the Union relating to the termination of her employment on November 28, 2009;[9]

8   and (3) State law claims against PMA and the Union for a hostile work environment.

9   Order, docket no. 31, at 17.

10  **Discussion**

11  **A.  Standard of Review**

12      Summary judgment is appropriate when there is no genuine dispute as to material

13  facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

14  56(a).  The moving party bears the initial burden of demonstrating the absence of a

15  genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

16  fact is material if it may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc.,

17  477 U.S. 242, 248 (1986).  The moving party will be entitled to judgment if the evidence

18  is not sufficient for a jury to return a verdict in favor of the opponent.  Id. at 249.

19

20  [9] The Plaintiff concedes in her response to the Union's motion for summary judgment that "she does not have sufficient evidence to support her claim of [the Union's] breach of duty of fair representation." Plaintiff's Opposition to Union's Motion, docket no. 88, at 2.  The Union is entitled to summary judgment

21  on this claim as a matter of law.  This claim is also time-barred because the claim was not brought within six months of termination or conclusion of the grievance procedures.  See Harris v. Alumax Mill Prod.,

22  Inc., 897 F.2d 400, 403-404 (9th Cir. 1990) (the six month statute of limitations begins to run when an employee knows or should know of the alleged breach of duty of fair representation).

23

1    If the moving party meets its initial burden, the opposing party "may not rely merely

2    on allegations or denials" in its pleadings but must "set forth specific facts showing that

3    there is a genuine issue for trial" in order to defeat the motion.  Id. at 250.  Summary

4    judgment is appropriate "against a party who fails to make a showing sufficient to

5    establish the existence of an element essential to that party's case, and on which that

6    party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

7    **B.  Claims Against Defendant PMA**

8        **1.  Title VII and ADEA Claims of Discrimination Because of Sex or Age**

9        Under Title VII it is considered an unlawful employment practice for an employer or

10   labor organization to discriminate on the basis of sex.  42 U.S.C. § 2000e-2(a)-(c).

11   Similarly, the Age Discrimination in Employment Act (ADEA) prohibits discrimination

12   by employers or labor organizations because of age.  29 U.S.C. § 623(a)-(c).

13   The McDonnell Douglas burden-shifting framework first requires the Plaintiff to

14   establish a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411

15   U.S. 792, 802 (U.S. 1973).  Applying the framework to the facts of this case, to present a

16   prima facie case against PMA the Plaintiff must prove that (1) she belongs to a protected

17   class, (2) she was performing according to her employer's legitimate expectations, (3) she

18   suffered an adverse employment action, and (4) other employees with qualifications

19   similar to her own were treated more favorably.  Godwin v. Hunt Wesson, Inc., 150 F.3d

20   1217, 1220 (9th Cir. 1998).

21   Once the Plaintiff has proven her prima facie case the burden shifts to PMA to

22   articulate a "legitimate, nondiscriminatory reason" for the adverse action.  McDonnell

23

1   Douglas Corp., 411 U.S. at 802.  Then the burden shifts back to the Plaintiff to show that

2   the proffered reason was a pretext for discrimination.  Id. at 804.  The Plaintiff can meet

3   this burden "directly by persuading the court that a discriminatory reason more likely

4   motivated the employer or indirectly by showing that the employer's proffered

5   explanation is unworthy of credence."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.

6   248, 256 (1981).

7         Instead of proceeding under the McDonnell Douglas framework, the Plaintiff may

8   "simply produce direct or circumstantial evidence demonstrating that a discriminatory

9   reason more likely than not motivated" the challenged decision.  McGinest v. GTE Serv.

10  Corp., 360 F.3d 1103, 1122-23 (9th Cir. 2004).  However the Plaintiff must still counter

11  the Defendant's explanation with some evidence suggesting that the challenged action

12  "was due in part or whole to discriminatory intent."  Id. at 1123.  If the Defendant

13  articulates a legitimate, non-discriminatory reason for the employment action, the

14  Plaintiff "must produce specific facts either directly evidencing a discriminatory motive

15  or showing that the employer's explanation is not credible."  Lindahl v. Air France, 930

16  F.2d 1434, 1438 (9th Cir. 1991).

17        **a)  Plaintiff Fails to Present a Prima Facie Case of Discrimination**

18        In order to present a prima facie case of discrimination, Plaintiff must either meet the

19  elements of McDonnell Douglas or present evidence of discriminatory intent.  The first

20  three McDonnell Douglas elements are not in dispute.  Plaintiff has proven that she is a

21  member of a protected class (female and over 40) and her November 2009 termination

22  was an adverse employment action.  The parties have not disputed that she was otherwise

23

ORDER - 14

1   performing according to expectations.  Thus in order to present a prima facie case,

2   Plaintiff must either produce evidence showing that other employees with qualifications

3   similar to her own were treated more favorably or alternatively Plaintiff must produce

4   evidence of PMA's discriminatory intent.[10]

5       Plaintiff's evidence primarily consists of unsubstantiated allegations in Plaintiff's

6   declaration that because she is a woman over 40 she was harassed, not given sufficient

7   training time, not allowed to be in radio contact with her trainer during testing,

8   disciplined for an accident despite offering an excuse, not allowed to be certified on the

9   heavy forklift, and not allowed to work during disciplinary proceedings.[11]  A plaintiff's

10  assertion of discriminatory motivation is "inadequate, without substantial factual

11  evidence, to raise an issue precluding summary judgment."  Steckl v. Motorola, Inc., 703

12  F.2d 392, 393 (9th Cir. 1983).

13      Plaintiff asserts that male employees had accident excuses accepted and were

14  therefore treated more favorably, but the employee records show that the workers

15  identified by Plaintiff were either registered workers or had not been involved in

16  accidents.  A registered worker is not similarly situated to a casual worker because a

---

[10] Plaintiff contends that "if she is able to show that any of the three complaints which formed the basis of her discharge was motivated at least in part by discriminatory animus, summary judgment is inappropriate."  Plaintiff's Opposition to PMA's Motion, docket no. 91, at 1-2.  However, Plaintiff's first two employer complaints occurred outside of the statute of limitations and are discrete acts which are thus time-barred.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Plaintiff must show evidence of more favorable treatment or evidence of discriminatory intent related specifically to her termination in November 2009.

[11] Any Title VII or ADEA claims occurring prior to May 23, 2009 are outside of the statute of limitations.  Order, docket no. 31, at 11-12.  Claims regarding Plaintiff's 2004 and 2005 semi-tractor training and testing and 2007 forklift training are thus time-barred.

ORDER - 15

registered worker is not subject to the three-strikes policy.  Plaintiff has failed to present evidence that male or younger casual workers were treated more favorably than she was.

Plaintiff also asserts that two male employees were involved in accidents in 2008 but were not charged, meaning they did not receive an employer complaint.  However Plaintiff has no personal knowledge regarding the circumstances or severity of the accidents and whether an employer complaint was warranted.  Plaintiff presents no evidence that complaints are not filed against men more often than women.

In addition to Plaintiff's assertions, her evidence includes declarations by two other female workers who claim they suffered discrimination.  In 2004, Anita Awsiuk was harassed by a male supervisor.  Awsiuk Decl. at ¶ 3.  In 2003, a trainer told Ms. Awsiuk that she "was unworthy of being a driver because [she] was a female."  Id. at ¶ 5.  In 2012, Vanessa Rasberry was involved in a physical altercation with male employees and initially received a harsher penalty than the men involved.  Rasberry Decl. at ¶¶ 4-9. Plaintiff presents no evidence that these situations are related to her own; Ms. Awsiuk's situation occurred outside of the statute of limitations and Ms. Rasberry's claims occurred over two years after Plaintiff was terminated.  Neither situation provides evidence of PMA's discriminatory intent in Plaintiff's termination in 2009.

///

///

///

///

///

ORDER - 16

1   The Plaintiff has failed to establish a prima facie case of discrimination under either

2   the McDonnell Douglas framework or by presenting evidence of PMA's discriminatory

3   intent.[12]

4   **b)  Plaintiff Fails to Counter PMA's Legitimate Reason for Termination**

5   Even if the Court were to hold that the evidence submitted by Plaintiff is sufficient to

6   establish a prima facie case of discrimination, Plaintiff has failed to show that PMA's

7   legitimate non-discriminatory reason for her termination was a pretext for discrimination.

8   PMA contends that Plaintiff was terminated solely because she received her third strike

9   offense and pursuant to the progressive discipline policy the appropriate response was

10  termination.  The burden is on the Plaintiff to present specific facts showing

11  discriminatory intent in the termination or showing that PMA's reason is not credible.

12  Plaintiff has failed to offer any specific facts that would meet this burden and the

13  Court is not persuaded that PMA's reason for the termination was a pretext for

14  discrimination.  The Court grants summary judgment in favor of PMA on this issue.

15  ///

16  ///

17

18  [12] Plaintiff contends that very little evidence of discriminatory motive is needed to raise a genuine issue of
19  material fact.  Plaintiff's Opposition to PMA's Motion, docket no. 91, at 8.  However Plaintiff's reliance
    on Lowe v. City of Monrovia and Cordova v. State Farm Ins. Cos. is misplaced because in both cases the
    plaintiff presented statements by a decision-maker that created a reasonable inference of discriminatory
20  intent.  See Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir. 1985) (statement by personnel
    manager that black female plaintiff should apply in another city begging for minorities and females
    created inference of discrimination); Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1149 (9th Cir.
21  1997) (hiring manager's derogatory comments calling another worker a "dumb Mexican" hired because
    he was a minority creates an inference of discriminatory motive for manager's refusal to promote
22  Mexican-American female plaintiff).   Plaintiff has presented no such evidence in this case.

23

1

### 2.  Hostile Work Environment Claims Under WLAD

2   WLAD prohibits employers from discriminating in terms and conditions of

3   employment or discharging an employee because of the employee's age or sex.  RCW

4   49.60.180(2), (3).  Claims under the statute generally have a three year statute of

5   limitations, however under the "unitary, indivisible claim" theory all acts contributing to

6   an alleged hostile work environment are treated as one unlawful employment practice as

7   long as one act contributing to the claim occurs within the filing period.  Nat'l Railroad

8   Passenger Corp. v. Morgan, 536 U.S. 101, 117-118 (2002); Antonius v. King County,

9   153 Wn.2d 256, 264-266 (2004).  To constitute one actionable unlawful employment

10  practice, the acts "must have some relationship to each other."  Antonius, 153 Wn.2d at

11  271 (citing Morgan, 536 U.S. at 118).  In addition, discrete acts such as termination or

12  failure to promote are not cognizable unless they themselves occur within the limitations

13  period.  Morgan, 536 U.S. at 108-113; Antonius, 153 Wn.2d at 264.

14  To present a prima facie case of hostile work environment, the Plaintiff must show

15  that "(1) the harassment was unwelcome, (2) the harassment was because of sex [or age],

16  (3) the harassment affected the terms and conditions of employment, and (4) the

17  harassment is imputable to the employer."  Antonius, 153 Wn.2d at 261.  In order to

18  affect the terms and conditions of employment, the harassment must be severe and

19  pervasive.  Davis v. Fred's Appliance, Inc., 171 Wn. App. 348, 361 (2012).

20  ///

21  ///

22  ///

23

In opposition to the pending motions, Plaintiff has failed to identify any act contributing to the claim occurring within the filing period.[13]  Plaintiff generally alleges that she was harassed and ridiculed, but offers no specific facts or evidence to support that claim.  See Plaintiff's Opposition to PMA's Motion, docket no. 91, at 17.  Her allegations are conclusory and do not identify any specific instances of harassment.[14]  See Casey v. Lewis, 4 F.3d 1516, 1527 (9th Cir. 1993) ("Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient [to defeat summary judgment].").

The Court grants summary judgment in favor of PMA on this issue.

**C. Claims Against Defendant Union**

**1.  Title VII and ADEA Claims of Discrimination Because of Sex or Age**

To establish a Title VII or ADEA claim of discrimination against the Union, the Plaintiff "can make a prima facie claim of discrimination by introducing evidence that the [Plaintiff] was singled out and treated less favorably than others similarly situated on account of…any …criterion impermissible under the statute."  Beck v. UFCW, Local 99, 506 F.3d 874, 882 (9th Cir. 2007) (citations omitted).  Once the Plaintiff has established a

---

[13] This case was filed on November 9, 2010, and thus actions occurring before November 9, 2007, are outside the filing period.

[14] The 2008 Phillips incident or the 2009 Faas incident discussed by the Defendants are acts within the filing period.  However, both incidents are isolated incidents of alleged harassment by Plaintiff's co-workers and neither incident indicates harassment sufficiently severe and pervasive so as to affect the terms and conditions of Plaintiff's employment.  Furthermore, Plaintiff has presented no evidence indicating that the incidents were related to each other or related to acts outside of the filing period.  Plaintiff has failed to present sufficient evidence to show that she suffered harassment because of sex or age that affected the terms and conditions of employment.

ORDER - 19

prima facie case, the burden shifts to the Union to articulate non-discriminatory reasons for its actions and then back to the Plaintiff to prove that she was the victim of intentional discrimination. Id. at 883.

To hold the Union liable, the Plaintiff must establish 1) the employer violated the collective bargaining agreement with respect to the employee; 2) the Union breached its duty of fair representation by allowing the breach to go unrepaired; and 3) some evidence indicates that Plaintiff was singled out and treated less favorably than others similarly situated on account of age and/or sex. See id. at 884. In Beck, the plaintiff was terminated in violation of a collective bargaining agreement, the union failed to file a requested grievance on the plaintiff's behalf, and the plaintiff presented evidence that the union had aggressively represented similarly situated male employees. Id. at 878. The Ninth Circuit affirmed the district court's conclusion that the union's actions "were fueled by discriminatory animus." Id.

Plaintiff has failed to establish the second and third elements required to hold the Union liable for discrimination. First, Plaintiff has already conceded that she does not have sufficient evidence to support her claim of the Union's breach of the duty of fair representation. Plaintiff's Opposition to Union's Motion, docket no. 88, at 2. This concession is fatal to the Title VII and ADEA claims as well, because the second element that the Plaintiff is required to prove to hold the Union liable is that the Union breached this duty.

Second, Plaintiff has failed to present evidence that Plaintiff was singled out and treated less favorably than others. The Union successfully advocated for Plaintiff to have

1   two previous employer complaints for missed shifts withdrawn and the Union was

2   successful in avoiding an employer complaint for an accident Plaintiff had on a different

3   occasion.  Plaintiff offers no evidence of male or younger employees that were treated

4   more favorably by the Union.

5        Finally, even if the Plaintiff was able to present evidence meeting the required

6   elements, Plaintiff has failed to present evidence showing that the Union's offered reason

7   for the termination was a pretext for discrimination.  The Union asserts that the

8   termination resulted from a third strike employer complaint.  The Union also contends

9   that it considered all evidence surrounding the November 23, 2009, accident and

10  concluded that the Union did not have a basis on the merits to oppose the complaint.

11       Plaintiff offers no evidence to discredit this reason, other than her unsupported

12  assertion that male employees had accident excuses accepted or had accidents without

13  employer complaints filed.  In addition, Plaintiff has presented no evidence indicating

14  that the Union's determination to not oppose the November 23 complaint was due to

15  discriminatory intent.

16       The Plaintiff has not met the burden of showing that the Union breached the duty of

17  fair representation and that the Union treated her less favorably than others.  The Plaintiff

18  also fails to show that the Union's legitimate reason for the termination was pretext.  The

19  Court grants summary judgment in favor of the Union on this issue.

20       **2.  Hostile Work Environment Claims Under WLAD**

21       WLAD prohibits unions from discriminating against any member because of sex or

22  age.  RCW 49.60.190(3).  To hold the Union liable under WLAD, the Plaintiff must show

23

ORDER - 21

1   that the Union acquiesced in discrimination, refused to file a grievance alleging

2   harassment, or that a Union official committed an overt act of discrimination.  See Woods

3   v. Graphic Communications, 925 F.2d 1195, 1200-1201 (9th Cir. 1991).

4        Plaintiff has presented no evidence that any Union official was involved in the alleged

5   harassment.  In addition, Plaintiff has not alleged that the Union refused to file a

6   grievance on her behalf alleging harassment.  The Union in fact did assist Plaintiff with

7   filing a 13.2 grievance related to the 2009 break room incident.  Finally, Plaintiff has

8   presented no evidence that the Union knew and acquiesced to discrimination taking

9   place.  The Court grants summary judgment in favor of the Union on this issue.

10       **Conclusion**

11       The Plaintiff has failed to present a prima facie case of discrimination on the basis

12   of age, sex, or a combination of age and sex under Title VII or the ADEA and has failed

13   to rebut the Defendants' legitimate non-discriminatory reasons for her termination.  The

14   Plaintiff has also failed to present a prima facie case of hostile work environment under

15   WLAD.  Thus both PMA and the Union are entitled to summary judgment as a matter of

16   law.  The Court GRANTS Defendant ILWU Local 19's Motion for Summary Judgment,

17   docket no. 72, and Defendant Pacific Maritime Association's Motion for Summary

18   Judgment, docket no. 79.  The claims of plaintiff Beverly Mulvihill are DISMISSED with

19   prejudice.

20   ///

21   ///

22   ///

23

ORDER - 22

1   The Clerk is DIRECTED to enter judgment in favor of defendant Pacific Maritime

2   Association, in favor of defendant ILWU Local 19 and against plaintiff Beverly Mulvihill

3   as to all claims alleged by Mulvihill, and to send a copy of this Order to all counsel of

4   record.

5   IT IS SO ORDERED.

6   Dated this 15th day of February, 2013.

7

8   _____
    THOMAS S. ZILLY
9   United States District Judge

ORDER - 23